JjDUFRESNE, Chief Judge.
This is an action by a residential condominium owner for an injunction directing a coffee shop in the condominium complex to discontinue using an outside seating area for its customers. The condominium owner claimed that the coffee shop’s use of the area exceeded its rights as a lessee. Following trial, the court found for the condominium owner and awarded injunctive relief, but in a form other than that sought by the condominium owner. The condominium owner appealed. We affirm the trial court’s judgment in favor of the condominium owner. However, finding error in the trial court’s conclusions concerning the coffee shop’s rights, we- set aside the trial court’s award of relief and render judgment awarding injunctive relief.
On April 1,. 1997, Oster Development, Inc. created the Friedrichs Square Condominium in Metairie and incorporated the Friedrichs Square Condominium Association, Inc. The condominium development consists of two adjacent two-story buildings separated by an alleyway approximately 11 feet wide. The second floor of each building contains residential condominium units. | ¡¡Commercial condominium units occupy the ground level of each building. The Friedrichs Square Condominium Association establishes rules and regulations for the condominium, and the association’s membership consists of the condominium owners.
Petitioner, Herbert Lacassagne, purchased one of the residential units in the Friedrichs Square Condominium in August 1997. John J. Zinsel leased one of the commercial condominium units, designated Unit B 2, from Oster Development and began operating the Royal Blend coffee shop on April 2, 1997. The disputed area is locáted in the front half of the alleyway between the two condominium buildings. The entrances to the residential condominium units are located in the rear portion of the alleyway. Royal Blend coffee shop placed tables and chairs in the disputed area for its customers to use. Mr. Lacas-sagne challenged Royal Blend’s use of that area and filed this suit for an injunction to prohibit Royal Blend’s further use of the area. Made defendants in Mr. Lacas-sagne’s suit were Oster Development, Inc. and its president, Donald C. Oster, Jr., and the Friedrichs Square Condominium Association, Inc. After suit was filed, John Zin-sel d/b/a Royal Blend, L.L.C. intervened in the action with defendants to oppose petitioner’s claims. Following trial, the district court rendered judgment in favor of petitioner, but ordered that Royal Blend coffee shop would be allowed to continue using the disputed area for its customers, subject to certain conditions and limitations.
At trial, Mr. Lacassagne and other residents of the Friedrichs Square Condomini *916 um testified about the problems created by Royal Blend’s use of the disputed area for its customers. According to that testimony, teenagers started using the area as a place to congregate late at night. Often, those using the 13area became boisterous at night and disturbed the condominium residents. Smokers discarded cigarette butts on the ground of the area; and on occasion, cigarette butts were thrown into the area where the residential condominium entrances were located. The condominium residents also testified that teenagers used the private parking area reserved for residents in the rear of the condominium buildings as an place to drink, smoke and urinate.
Mr. Oster and Mr. Zinsel testified for the defense at, the trial. Both were quite familiar with the complaints lodged by the condominium residents over Royal Blend’s use of the disputed area. They testified that they met with some of the condominium residents and reached agreements aimed at resolving those complaints. Mr, Zinsel retained and stationed an off-duty sheriffs deputy in the disputed area for 30 days to prevent .any improper behavior or noise. During construction of the condominium complex, an iron gate was installed across the forward end of the disputed area, facing the public parking lot. In light of the complaints by the residents, another iron gate was installed across the rear of the disputed area to separate that area from the entrances to the residential condominium units. Mr. Zinsel further testified that he locked off the disputed area to prevent Royal Blend’s customers from using it between the hours of 8:00 p.m. and 7:00 a.m. daily and that he emphasized cleanliness of the disputed area with the cleaning service retained by his business. Mr. Oster and Mr. Zinsel also noted in their testimony that a sign was placed on the front gate of the disputed area asking Royal Blend customers to enter the coffee shop through its front entrance and requesting that bicycles and strollers not be left in the disputed area. In their .testimony, the condominium residents acknowledged that these actions reduced, but did not completely alleviate the problems with Royal Blend’s use of the disputed area.
U-Among the exhibits introduced into evidence at trial were the declaration creating the Friedrichs Square Condominium, the bylaws of the Friedrichs Square Condominium Association, and the lease between Oster Development and John Zinsel for Unit B-2 of the condominium.. The bylaws establish that membership in the Fried-richs Square Condominium Association is based on ownership of a condominium unit. Article XIX of the bylaws provides the rules and regulations to be followed by condominium association members. Paragraph C of Article XIX states:
The sidewalks, entrances and passages must not be obstructed or encumbered or used for any purpose other than ingress and egress from the premises, except that the owner of Unit B2 may place tables and chairs on the sidewalk adjacent to said unit for the service and convenience of the unit owner’s patrons.
At trial, the parties disputed the application of Article XIX, paragraph C of the bylaws. Petitioner contended that the disputed area did not constitute a “sidewalk” within the meaning of that article. Defendants responded that the area did constitute a “sidewalk” and referred for support to the definition of “common elements” found in Article IV, paragraph A(5) of the condominium declaration:
A. Description. Except as otherwise provided herein, the common elements shall consist of the portion of the condominium property not a part of the indi *917 vidual units. Without limiting the generality of the foregoing, the common elements shall include the following:
[[Image here]]
5. All balconies, decks, terraces, patios, porches and entrances to and exits from the building; except for those balconies designated as limited common elements in Paragraph B of this Article.
[ sThe trial court considered these articles of the bylaws and the condominium declaration, as well as the bylaw provisions prohibiting nuisance conditions or disturbances in the condominium complex. Although the trial court awarded judgment in favor of petitioner, the court found that the disputed area constituted a “common element” and that Royal Blend coffee shop could use the area to seat its customers. After further concluding that the condominium bylaws did not convey exclusive use of the disputed area to the coffee shop, the trial court imposed as limitations on Royal Blend’s use of the disputed area the conditions previously developed in the compromise between the condominium residents and the coffee shop.
A reviewing court may not upset a trial court’s factual finding in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The Louisiana Supreme Court has announced a two-part inquiry for reversing the factfinder’s determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the factfinder, and (2) the appellate court must also determine that the record establishes that the finding is clearly wrong or manifestly erroneous. Stobart v. State, through DOTD, 617 So.2d 880, 882 (La.1993). The inquiry is thus whether the factual findings are reasonable, not whether the factfinder was right or wrong. If, in light of the record in its entirety, the trial court’s findings are reasonable, then the appellate court may not reverse, even if convinced it would have weighed the evidence differently sitting as the trier of fact. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990).
The trial court’s conclusion that the disputed area constituted a “common element” available for use by the coffee shop under the condominium bylaws and | (¡declaration is not supported by the evi-dentiary record and is thus manifestly erroneous. Article XIX of the bylaws grants the owner of Unit B2 the right to place tables and chairs on the “sidewalk” adjacent to those business premises for the convenience of customers. The evidence does not establish that the disputed area is a sidewalk. Photographs introduced at trial clearly show that the entire area between the two condominium buildings is surfaced with finished, patterned concrete. This area includes both the disputed area and the area containing the entrances to the residential condominiums. The finished surface throughout this area contrasts markedly with the plain, unfinished concrete surfaces of the adjacent sidewalks in front and behind the buildings. The sign placed on the front gate of the disputed area refers to the area as a “patio.” Moreover, the condominium plot plan incorporated as an exhibit to the coffee shop’s lease specifically identifies the disputed area as a “Patio Courtyard (Landscaped).” The term “patio' courtyard” more accurately characterizes the configuration and use of the area than does the term “sidewalk.” Considering the trial evidence, the disputed area is not a “sidewalk” within the customary understanding of that term and does not constitute a “sidewalk” under Article XIX of the condominium bylaws. Thus, Article XIX of the bylaws does not grant the owner of Unit *918 B-2 the right to place tables and chairs in the disputed area for the convenience of customers.
Nor is the disputed area available for the coffee shop to use as a “common element” under Article IV of the condominium declaration, which specifies the rights and entitlements of condominium owners. John Zinsel d/b/a Royal Blend, L.L.C. is the lessee of condominium Unit B-2, not the owner. Because the coffee shop is not the owner of Unit B-2, the condominium declaration has no application in determining the shop’s rights. As lessee, the coffee shop’s rights and entitlements are found in the lease between John Zinsel and Oster Development, 17Inc. Article V of that lease covers “Common Areas,” and paragraph 5.01 states in pertinent part:
Uses and Management. Lessee shall have the use, in common with other lessees and their customers, of the common areas, including the parking spaces, sidewalks, loading areas, etc. The common areas at present are shown on the attached Exhibit “A” and Lessee shall not interfere with or restrict the use of said areas by others....
The disputed area is not a “common area” under the Article V of the lease because the area forms no part of the condominium complex’s parking spaces, sidewalks, or loading areas. Moreover, as previously stated, the disputed area is identified as a “Patio Courtyard (Landscaped)” in the condominium plan attached to the lease as Exhibit “A.” Thus, the lease covering Unit B 2 does not grant the coffee shop the right to use the disputed area as seating for its, customers.
Based on the foregoing analysis, the 'evidence presented at trial fully supports the trial court’s judgment in favor of petitioner, Herbert L. Lacassagne. However, the trial court’s conclusion that the disputed area was a “common element” available for the coffee shop’s use under the condominium bylaws and declaration is not supported by the evidence and is thus manifestly erroneous.
Accordingly, we affirm the trial court’s judgment in favor of petitioner, Herbert L. Lacassagne, reverse the remaining portion of that judgment, and render judgment granting petitioner injunctive relief prohibiting further use of the disputed area as customer seating by the lessee of Unit B 2. The parties will bear their own costs of this appeal.

AFFIRMED IN PART, REVERSED IN PART, JUDGMENT RENDERED.